MARIA G. FRADE *vs.* EUGENE M. COSTA & others.

Bristol.   November 10, 1960. — February 6, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& CUTTER, JJ.

*Equity Pleading and Practice,* Master: qualification, exceptions to report,
view.

Exceptions to findings made by a master, and to his failure to make other
findings, on unreported evidence had no standing. [7]
A master may properly state in his report what he has observed on a
view. [7]
Bias or interest of a master in a suit in equity was not shown by the
mere fact that shortly before his appointment and his hearings he, like
a number of other attorneys, had contributed money to a campaign for
public office of the attorney for one of the parties to the suit. [7–8]

BILL IN EQUITY, filed in the Superior Court on September
12, 1957.

Following the report of a master certain motions were
heard by *Smith, J.,* and *Macaulay, J.,* and a final decree
dismissing the bill was entered by *Coddaire, J.*   The plain-
tiff appealed.

*Joseph Freitas,* for the plaintiff.

*Edmund Dinis,* for the defendants, submitted a brief.

WILLIAMS, J.   In this suit in equity the plaintiff seeks to
have established in New Bedford a right of way by prescrip-
tion from Church Street over land of Eugene M. Costa and
Joanna Costa (hereinafter called the defendants) to land
of the plaintiff and to restrain any interference with its use
by them or by John Hilton, chief of police of the city, who
is joined as a defendant.   A master to whom the suit was
referred found as follows: The plaintiff's land consists of
three lots totaling thirty-one acres located about 1,500 feet
west of a public way called Church Street.   These lots,
numbered 41, 10, and 42 on "the Assessor's Plan," are
shown with the disputed way on a sketch which is desig-

nated "Exhibit 'A.' " Lot 41 was acquired by the plaintiff's husband in 1940 and transferred to them as joint tenants in 1942. Lots 10 and 42 were acquired by the plaintiff and her husband as joint tenants respectively in 1943 and 1948. The plaintiff's husband died in 1951. The defendants' land is on Church Street, and was acquired in 1944. The disputed way is shown on exhibit A. It runs northwesterly from Church Street across the defendants' land, then over land of Acushnet Saw Mills Company and the tracks of the New York, New Haven and Hartford Railroad to lot 41 of the plaintiff. "From the time the plaintiff and her husband acquired lot 41, on July 15, 1940, they used the 'way in dispute' and in recent years they have run heavy trucks and equipment over this way." Before purchasing his land in 1944 the defendant Eugene M. Costa had rented it for three or four years for purposes of a piggery and had observed the trucks and equipment going over his land but although he and his wife "objected to the use being made of their premises . . . they never assumed a hostile attitude." They were assured that the plaintiff was developing a road of access to her land from a proposed street west of the railroad track. When it "became evident [to them] . . . that the plaintiff was not seriously undertaking the construction of . . . [a] new access or way they caused the plaintiff's son to be arrested for trespass and . . . put up barriers and blocks to prevent the entrance of traffic upon their land." The master stated in conclusion that he was "unable to find that the 'way in dispute' as shown in Exhibit 'A' and which way is the way under consideration, has been used by the plaintiff and her predecessors in title and former tenants in an open, uninterrupted and adverse manner for a period of not less than twenty years."

After a hearing on December 2, 1958, the master's draft report was settled and filed on December 17. Appended thereto were thirteen objections by the plaintiff and a motion by her for "disqualification of [the] master" on the ground that he had contributed $20 toward the expenses of the attorney for the defendants in campaigning for election

to the office of district attorney in the district which includes New Bedford. A motion to set aside the master's report "for partiality and interest of the master and for findings and failure to make findings erroneous as matter of law" was denied. Thereafter a motion for a new trial based on newly discovered evidence was filed and denied. There was no error in the denial of these motions. On January 28, 1959, the defendants filed a motion for judgment on the master's report which was "treated as a motion to overrule objections and confirm master's report" and was allowed on February 9, 1959. On that day an interlocutory decree was entered confirming the report. A final decree dismissing the plaintiff's bill was entered on May 20, 1959, and the plaintiff appealed.

The objections to the master's report refer to his alleged erroneous findings of fact and his failure to make other findings desired by the plaintiff. They are based upon evidence which is not reported and have no standing. The report discloses no error on its face. *Shaw* v. *United Cape Cod Cranberry Co.* 332 Mass. 675, 678. *Minot* v. *Minot,* 319 Mass. 253, 258–259. There was no impropriety in the master stating what he observed when taking a view as to the existence of another apparent way which had been used and led from the plaintiff's land to Church Street over the land of Acushnet Saw Mills Company. *Stewart* v. *Hanreddy,* 212 Mass. 340, 343. See *Lawyers Mortgage Inv. Corp. of Boston* v. *Paramount Laundries Inc.* 279 Mass. 314, 316.

The principal complaint of the plaintiff relates to the partiality and bias of the master as evidenced by a campaign contribution admittedly made by him to the attorney for the defendants on October 11, 1958. We have said that the mandate of art. 29 of the Declaration of Rights is "rigidly enforced" and that bias, prejudice or interest in the outcome of litigation will disqualify judge, master or auditor. *Beauregard* v. *Dailey,* 294 Mass. 315, 324–325. The question is whether the master's contribution opens him to justifiable suspicion of bias or prejudice so as to dis-

qualify him from acting as master. It appears from the certificate filed by the attorney as a candidate that the master was one of twenty-four attorneys listed as contributing to his campaign. His contribution was recorded as of October 11, 1958, and his appointment as master by the court made on October 15. There was no impropriety in the contribution. So far as appears it was a normal incident in a campaign for public office. It does not tend to indicate any closer relation between the contributor and the recipient than would ordinarily exist between members of the same local bar. There is no evidence of any interest of the master in the outcome of the litigation or of any personal bias or prejudice against the litigants. We think the motion to set aside the report on the alleged grounds of partiality and interest of the master was rightly denied.

*Final decree affirmed.*